IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KWASI BOAFO MANU, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL ACTION NO. 17-00153-KD-B |
| | ) |
| UNITED STATES OF AMERICA,[1] | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

The age-old question of how many people does it take to change a light bulb has reached federal court. The matter is currently before the undersigned on Defendant's motion for summary judgment. (Doc. 52-54). Defendant contends it only takes one Second Engineer to change a light bulb. Plaintiff asserts, for the first time in his response, that assigning less than two people is proof that the Chief Engineer of the vessel was negligent under the Jones Act. Moreover, Plaintiff alleges that the ship was unseaworthy because he was not provided with the "safe, proper working and operational illumination" he needed to change the light bulb and because Defendant failed to warn him of the threshold in the doorway to the Tech Library. Upon consideration, and for the reasons set forth herein, the motion for summary judgment is **GRANTED.**

I. <u>Factual and procedural background</u>[2]

---

[1] Defendant Patriot Contract Services, LLC was dismissed from the action in May 2017 (doc. 26).

[2] "Although the 'facts,' as accepted for purposes of summary judgment, may not be the actual facts of the case, 'our analysis ... must begin with a description of the facts in the light most favorable to the plaintiff, and our decision must accept those facts." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (citation omitted).

Plaintiff Kwasi Boafo Manu has been a seafarer since 1972. On October 20, 2014, he signed aboard the USNS Gordon as the vessel's Second Assistant Engineer. A Second Engineer is responsible for maintenance of the vessel. Typically, "Plaintiff received his assignments from the First Engineer or the Chief Engineer every morning." (Doc. 58, Plaintiff's response, p. 1) On the morning of January 4, 2015, the vessel was in port at reduced operational status. The Chief Engineer assigned Plaintiff to relamp the vessel, *i.e.*, check light fixtures for proper operation and replace burned out light bulbs.[3] "Relamping is one of Plaintiff's regular duties." (Doc. 58, p. 2). "When relamping is done during the regular work week there are 2 people assigned to the task together." (Id.) "Because it was Sunday and three of the engineering crew members were off duty, [the Chief Engineer] assigned Plaintiff to carry out the task alone." (Id.).

"After receiving his assignment from the Chief Engineer, Plaintiff gathered a ladder, fluorescent light bulbs, and his tool bag and began going from room to room on the vessel checking to see if the lights needed replacing." (Doc. 58, p. 2) "Plaintiff ultimately ended up in the tech library which is on a different level from where he attained the ladder, bulbs, and tool box." (Id.) "Plaintiff knew that there was a bulb out in the tech library so he didn't have to check to see if that worked." (Id.).

"When he reached the tech library, he immediately attempted to walk through the door with a ladder over his shoulder, his tool bag in his hand and the bulbs in his other hand." (Doc. 58, p. 2). "As Plaintiff entered the tech library he tripped over the raised threshold at the door[.]" (Id.)

---

[3] The parties disagree as to whether the Chief Engineer asked Plaintiff if he wanted to work and then assigned the task of relamping or whether Plaintiff approached the Chief Engineer about working overtime and volunteered to do so. (Compare Doc. 53, p. 2 with Doc. 58, p. 1; *see* doc. 59, p. 34, Bailey deposition ("Q. Who assigned him the tasks that he was doing at the time of his injury? A. It was voluntary. He wasn't assigned a task. He took it upon himself to go and do lighting corrections. Q. Okay. That's within his realm of responsibility, lighting corrections? A. Yes.")).

"While [Plaintiff] was aware of the raised threshold, he tripped because his attention was directed at entering the narrow door with a ladder, tool box and bulbs and therefore he wasn't looking at the threshold." (Id.)  Plaintiff knew the raised threshold was there as well as other thresholds throughout the ship. (Doc. 53, p. 5).

> Plaintiff testified that he tripped and fell on his shoulder because
>
> The illumination was only from the alley, and my back was facing the alley. So, the Tech Library was a little bit darker. That was one factor.  Then I was carrying a ladder and a bag and a bulb at the same time, so I had to concentrate - - - my attention was divided.  You know, when you have a ladder in the alley, you don't want to knock - - I was concentrating on that one also. That was when I tripped and fell on my shoulder.

(Doc. 53, p. 5).

Plaintiff testified that there was no reason he did not take the ladder, bag, and tools into the Tech Library one at a time (Doc. 53, p. 6).  He was not in a hurry and did not have a timeline (Id., p. 8). With respect to darkness, Plaintiff testified that he had a headlamp, but did not use it (Id., p. 7).

The Chief Engineer testified that lamping rounds do not customarily require two seamen. (Doc. 53, p. 8).  He also testified that changing the light bulbs in the accommodation area, where the Tech Library is located, does not require a crewman to ascend more than one or two rungs on a ladder. Therefore, he did not consider this to be a two-crewman task. (Doc. 59, p. 5)[4]

On March 31, 2015, after several medical examinations, Plaintiff was ultimately diagnosed with a torn rotator cuff and a broken bone. He had surgery to repair the injury.  On February 5, 2016, one year later, Plaintiff 's treating physician released him to return to work without

---

[4] The Chief Engineer testified that the ceiling is seven feet and he "can reach up and open that lamp fixture without a ladder." (Doc. 59, p. 38).  Thus, his assessment was that Plaintiff could step on the first rung of a ladder and do the job. (Id.).

restrictions. Plaintiff was found fit for duty without restrictions following his March 15, 2016 and March 6, 2017 physical examinations.

On December 16, 2016, Plaintiff filed a three-count Complaint against the United States alleging (1) Jones Act negligence; (2) unseaworthiness; and (3) unpaid maintenance and cure benefits, all arising from the trip and fall accident (doc. 1). Defendant's motion for summary judgment as to all counts is now pending before the Court.

II. Conclusions of Law

    A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (Dec. 2010). Defendant, as the party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). In deciding whether the Defendant has met this initial burden, the Court must review the record and draw all reasonable inferences therefrom in a light most favorable to Plaintiff, as the non-moving party. *See Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999).

Once the Defendant meets this responsibility, the burden shifts to Plaintiff, as the non-movant, to show the existence of a genuine issue of material fact that would preclude summary judgment. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

"In reviewing whether the [non-movant has met the] burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986) ((bracketed text added).  However, the Defendant would be entitled to summary judgment if Plaintiff fails "to make a sufficient showing on an essential element of [his] case with respect to which [he has] the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552) (bracketed text added).

The mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004).  "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted).

B. <u>Analysis</u>

1. <u>Count I – Negligence under the Jones Act</u>

With respect to Jones Act negligence, Plaintiff alleges in his complaint that his injury was the result of Defendant's negligent failure to provide a safe place to work and a safe and seaworthy vessel. Specifically, Plaintiff alleges that Defendant failed to provide safe, operational, and properly working illumination in the Tech Library.  Plaintiff also alleges that Defendant failed to warn him about the raised threshold in the doorway to the Tech Library, which was concealed and hidden

because of the dark and improperly illuminated environment. (Doc. 1).  In his response to the motion for summary judgment, Plaintiff argues that Defendant was negligent because the Chief Engineer did not assign two crew members to change the light bulb in the Tech Library.  Plaintiff argues that this negligence caused him to trip and fall while carrying the ladder, light bulb, and tool bag over the threshold.

Pursuant to the Jones Act, a seaman may sue an employer for injury "resulting in whole or in part from the negligence" of the employer. 46 U.S.C. § 30104, *et seq*. (incorporating the remedies under FELA); 45 U.S.C. § 51 (FELA); *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 415, 129 S. Ct. 2561 (2009)). "A Jones Act claim has four elements: (1) plaintiff is a seaman; (2) plaintiff suffered an injury in the course of employment; (3) plaintiff's employer was negligent; and (4) employer's negligence caused the employee's injury, at least in part." *Jackson v. NCL Am., LLC*, 2016 WL 9488717, at *2–3 (S.D. Fla. Jan. 26, 2016) (affirmed, *Jackson v. NCL Am., LLC,* - - - Fed. Appx. - - -, 2018 WL 1736817 (11th Cir. Apr. 10, 2018) (quoting *Bendis v. NCL (Bahamas), Ltd.,* 2015 WL 1124690 at *2 (S.D. Fla. March 11, 2015)).  The parties do not dispute that Plaintiff was a seaman or that he was injured during the course of his employment.

As to the third element, that Plaintiff's employer was negligent, Plaintiff must show that Defendant failed to use reasonable care to provide him with a reasonably safe place to work. *Ivy v. Security Barge Lines, Inc.,* 585 F.2d 732, 741 (5th Cir.1978).  With respect to failure to warn, negligence may occur if Defendant or its agents either knew or should have known of a dangerous condition. *See Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1543 (11th Cir. 1989). A "shipowner in a Jones Act case has a duty to warn his employees 'in an effective way of dangers not reasonably known.' In other words, shipowners need not warn seamen of dangers that are 'open and obvious.'" *Patterson v. Allseas USA, Inc.*, 137 Fed. Appx. 633, 637 (5th Cir. 2005); *Thompson v. Oceania Cruises, Inc.,* 2015 WL 12562892, *3 (S.D. Fla. Oct. 13, 2015) (same).  "There is no duty to

instruct an experienced seaman on matters within common sense, or to remind him of what he already knew or should have known." *Schouweiler v. Western Towboat Co.,* 2007 WL 4410252, at *6 (W.D. Wash. Dec. 14, 2007) (citations omitted). Additionally, Defendant and Plaintiff are held to the same standard or care. Both are obligated to act with ordinary prudence. *See Pettis v. Bosarge Diving, Inc.*, 751 F. Supp. 2d 1222, 1241-1242 (S.D. Ala. 2010) (citing Pattern Civ. Jury Instr. 11th Cir., cmt. at 361 (2005)).

On motion for summary judgment, Defendant argues that it used reasonable care to maintain a reasonably safe place to work and had no duty to instruct Plaintiff, an experienced engineer, on stepping over a threshold to enter a dim room to replace a light bulb while carrying equipment. Defendant argues that Plaintiff should have exercised reasonable care or ordinary prudence, "amalgamated with his specific experience, training and education" to perform the task in a reasonably safe manner, but was injured because he did not do so. (Doc. 53, p. 17) Defendant states that the accident was entirely of Plaintiff's making and that his failure to use common sense (of which Plaintiff is presumed to be imbued) when transporting the items over the threshold, prevents him from going forward with his claim for negligence. In support, Defendant points out that Plaintiff admitted that he knew of the threshold before the incident, admitted he had a headlamp but did not use it to, elected to fill both his arms and hands while crossing the threshold, and admitted that this decision caused his trip and fall.

Plaintiff does not dispute that he has a duty to act with ordinary prudence consistent with his training and experience. Nor does plaintiff respond directly to Defendant's argument that it was not negligent for failing to warn him about the raised threshold or warn him that dim lighting may have hidden or concealed the raised threshold.

The undisputed evidence shows that Plaintiff tripped on the threshold when attempting to carry too many items into the Tech Library. The Court agrees with Defendant that there is no duty

7

to instruct Plaintiff, an experienced seaman, on matters within common sense, or to remind him of what he already knew or should have known. *Schouweiler,* 2007 WL 4410252, at *6.  Defendant was not required to warn Plaintiff about carrying too many items when negotiating raised thresholds on a vessel.  A "vessel owner will not be held liable if a job could have been performed with reasonable safety, but the plaintiff was injured because he did it in an unsafe manner." *Schouweiler,* 2007 WL 4410252, at *5 (citing *Debose v. MS Loppersum,* 438 F. 2d 642, 642-643 (5th Cir. 1971)).

Instead of responding to the challenge to the claims of his complaint, Plaintiff asserts new bases of negligence.  Specifically, Plaintiff argues that Defendant was negligent because the Chief Engineer did not assign two crew members to relamp the vessel.  Plaintiff also asserts that Defendant was negligent by failing to perform a Job Safety Analysis on the task of replacing light bulbs prior to the assignment.  Plaintiff asserts that if the analysis had been performed, Defendant would have known that sending one crew member to change the light bulb was unsafe and would have assigned two crew members to the task.

Plaintiff's arguments fail for two reasons.  First, Plaintiff cannot assert new claims by way of a response to summary judgment.  *See Flintlock Const. Services, LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227–28 (11th Cir. 2013) ("This court's precedent foreclosed Well–Come's attempt to amend its complaint at the summary judgment stage without seeking leave of court pursuant to Rule 15(a)(2).").[5]

---

[5] In *Flintlock*, the Court of Appeals for the Eleventh Circuit expressed disfavor with some district courts' practice of ignoring "what the respective parties alleged in their complaint and answer" and considering "their claims and defenses as depicted in the memoranda they filed in support of or in opposition to a motion for summary judgment."  710 F.3d at 1227.  The Eleventh Circuit explained that the "result is that on appeal we have difficulty in determining whether the district court, in granting summary judgment, ruled on the claims and defenses as stated in the complaint and answer or as stated in the memoranda submitted to the court on summary judgment, as if the pleadings had been amended by implied consent." *Id.*

Second, Plaintiff was not injured while changing a lightbulb. Plaintiff was injured because he tripped over a threshold. Arguably, if two crew members had been assigned to the task, the load may have been shared. However, that does not alter the fact that Plaintiff did not see the necessity of taking items into the room one at a time. In *Harrison v. Seariver Maritime, Inc.,* 61 Fed. Appx. 119, 2003 WL 342266 (5th Cir. 2003) (unpublished opinion), the circuit court found that carrying hoses "was routine and certainly not hazardous; moving shipboard equipment is a common and expected physical task." *Id*. at *5. The circuit court explained that "[o]rdinary prudence is exercised when a safe procedure is used for a routine task, even when a safer procedure might exist." *Id*. Thus, even though assigning two crew members to relamp the Tech Library could arguably be a "safer procedure" for the routine task of carrying equipment for relamping, Plaintiff could have used a "safe procedure" for performing this routine task, if he had carried the items one at a time over the threshold. Plaintiff has not established a genuine issue of material fact as to whether Defendant was negligent, thus Defendant is entitled to summary judgment as to Plaintiff's claim for Jones Act negligence.

2. <u>Count II - Unseaworthiness</u>

With respect to unseaworthiness, Plaintiff alleges in his complaint that under the General Maritime Law, Defendant owes a duty to provide a safe and seaworthy vessel. Plaintiff alleges that Defendant violated this duty by failing to provide safe, operational and properly working illumination in the Tech Library and by failing to warn him about the raised threshold in the doorway to the Tech Library, which was concealed and hidden because of improperly illuminated conditions. (Doc. 1). Plaintiff argues that this unseaworthy condition caused him to trip and fall while carrying the ladder, light bulb, and tool bag over the threshold.

"Under general maritime law, a shipowner has an absolute duty to furnish a seaworthy ship." *Smith v. BP Am., Inc.*, 522 Fed. Appx. 859, 864–865 (11th Cir. 2013) (emphasis removed) (citation omitted). However, the shipowner is not obligated to furnish "an accident free vessel", but instead the "question is one of reasonable fitness for the intended use of the vessel and her appliances." *Johnson v. Bryant,* 671 F. 2d 1276, 1279-1280 (11th Cir. 1982). In *Haughton v. Blackships, Inc*., the circuit court explained "that 'a seaman is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery.'" 462 F.2d 788, 789 (5th Cir. 1972) (citation omitted). "Thus, a seaman who is injured by an unseaworthy condition on a ship has a right to recovery against the owner of the vessel beyond maintenance and cure." *Smith,* 522 Fed. Appx. at 865 (emphasis removed) (citation omitted). The Eleventh Circuit has "adopted a 'substantial factor' standard of causation for 'unseaworthiness' claims brought under general maritime law." *McClow v. Warrior & Gulf Nav. Co*., 842 F.2d 1250, 1251 (11th Cir.1988). Thus, Plaintiff "must show that the unseaworthiness played a substantial part in bringing about or actually causing the injury and that [ ] the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Pettis v. Bosarge Diving, Inc*., 751 F. Supp. 2d 1222, 1243 (S.D. Ala. 2010) (citation omitted).

Defendant argues that it is entitled to summary judgment because Plaintiff cannot show that his injury was caused by the alleged lack of operational illumination in the Tech Library or the alleged failure to warn Plaintiff about the threshold in the entryway. Defendant argues that Plaintiff's own unseamanlike method of work – "his decision to enter a dim room without using a flashlight and while leaving himself no hand with which to break or prevent his fall" - caused his injury. (Doc. 53, p. 26). Defendant points out that relamping was part of Plaintiff's duties as an engineer and that he knew of the non-operational illumination in the Tech Library. Defendant also

points out that Plaintiff was aware of the threshold in the Tech Library as well as other thresholds throughout the ship, and that he had a headlamp but did not use it.

Defendant also argues that the "Primary Duty Doctrine" bars Plaintiff's recovery for Jones Act negligence. Defendant argues that the doctrine, as applied in this circuit, denies recovery where a ship's officer, with actual knowledge of an unsafe condition that the officer is assigned to correct as part of his customary job duties, is injured by that unsafe condition. Defendant argues that Plaintiff, the Second Engineer charged with the duty to relamp the vessel, knew the light was burned out in the Tech Library and thus knew of the alleged unsafe condition – dim lighting - that he was assigned to correct, and thus cannot recover for his injury from tripping over the dimly lighted threshold. Defendant also argues that Plaintiff's decision to carry the ladder, tool bag and light bulbs, all at one time, without leaving one hand free to himself for safety, precludes recovery.

Plaintiff responds that the doctrine has no application in a Jones Act case because of § 54 of the Federal Employees Liability Act (FELA). Alternatively, Plaintiff argues that even if the doctrine applies, it applies only when a plaintiff's injuries result solely from the plaintiff's own negligence.

Plaintiff cites to *Louisiana & Arkansas Ry. Co. v. Johnson,* 214 F. 2d 290, 292 (5th Cir. 1954) for his argument that the Primary Duty Doctrine has no application. In that FELA action, the Fifth Circuit rejected the doctrine as obsolete. However, the Eleventh Circuit has not rejected the doctrine. Instead, it has limited the application to circumstances where there was misconduct or actual knowledge of an unsafe condition on the part of a ship's officer, and that unsafe condition caused the injury. In *Villers Seafood Co., Inc. v. Vest,* the Court of Appeals for the Eleventh Circuit, held that the doctrine applies only to ship officers who are charged with the duty to maintain the vessel. The circuit court found as follows:

> Vest did testify that it was his duty to keep the vessel in repair, and some courts
> have denied recovery under the "Walker doctrine" which states that a ship's

11

> officer whose breach of duty to maintain a safe ship has caused his injury by an unseaworthy ship or appliance may not recover damages for his injuries. However, in each of the cases in which the court has denied recovery the injured officer actually knew of the existence of the unseaworthy condition before the accident. We are unwilling to extend the doctrine to a case in which no misconduct or actual knowledge of the existence of an unseaworthy condition has been proven.

813 F.2d 339, 342–343 (11th Cir. 1987).

Assuming for purposes of this opinion only, that the non-operational light bulb could be an "unseaworthy condition", there is no dispute of fact that Plaintiff, as a Second Engineer, is an officer charged with the duty to maintain, *i.e.*, relamp, the vessel. There is no dispute that he "actually knew of the existence" of the non-operational light bulb, *Id.* and that he knew that the lighting was dim in the Tech Library before he stepped over the threshold. (Doc. 58, p. 2, Doc. 53, p. 5).[6] Plaintiff also admitted that there was no reason he did not carry the ladder, light bulb and bag over the threshold one at a time. (Doc. 54-2, p. 22, Manu deposition). These undisputed facts establish that the Primary Duty Doctrine applies, and therefore, Defendant is entitled to summary judgment in its favor as to Plaintiff's claim of unseaworthiness.

Plaintiff also argues, for the first time in his response, that the duty to provide a seaworthy vessel "includes the owner's obligation to provide a sufficient number of crew members to safely perform a task" and that a fact finder could conclude that the Chief Engineer's failure to assign two crew members to carry the necessary items for the relamping task, rendered the vessel unseaworthy. (Doc. 58, p. 4, p. 6) He also argues that if Defendant had performed a Job Safety Analysis, it would have known that two crewmembers were required to change the light bulb, and it is likely that the Chief Engineer would not have assigned Plaintiff to perform the task alone.

---

[6] "The illumination was only from the alley, and my back was facing the alley. So, the Tech Library was a little bit darker." (Doc. 53, p. 5).

Plaintiff's new bases for his unseaworthiness claim fail as untimely. However, Plaintiff has also not shown a genuine issue of material fact as to the unseaworthiness of the vessel. He must show that an unseaworthy condition, which may include assigning an insufficient number of workers to perform a task, *see Michel v. Jade Marine, Inc.*, 2008 WL 5382255, *3–4 (E.D. La. Dec. 22, 2008), played a substantial part in causing the injury or the injury was a direct result or reasonably probable consequence of this unseaworthiness. Plaintiff relies upon his conclusory speculation that a Job Safety Analysis would have shown that two crew members were necessary to perform this task. However, Defendant points out that Chief Engineer's testimony that relamping in the Tech Library, where the ceiling is seven feet high, does not require a crew member to ascend more than one or two rungs on a ladder and is not considered a two-crew member task. (Doc. 59, p. 4, p. 38). This evidence was unrefuted. Since Plaintiff has failed to show a genuine issue of fact as to the unseaworthiness of the vessel, summary judgment is due to be granted in Defendant's favor.

### 3. Count III – Maintenance and Cure

Plaintiff did not address Defendant's argument that summary judgment should be granted in its favor as to Plaintiff's claim for maintenance and cure (doc. 58, response). Thus, Plaintiff has abandoned this claim. *See Cusick v. Yellowbook, Inc.,* 607 Fed. Appx. 953, 956 n.1 (11th Cir. Apr. 20, 2015) ("Cusick also raised claims for association discrimination under the ADA based upon his termination and for retaliation. However, he did not address these claims in his response to Yellowbook's motion for summary judgment, and the district court properly deemed them abandoned.") (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) for its "holding that 'grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.'"); Accordingly, summary judgment is granted in favor of Defendant as to Plaintiff's claim for maintenance and cure.

C. Conclusion

Upon consideration of the evidence and for the reasons set forth herein, the Court finds that Defendant is entitled to judgment as a matter of law as to Plaintiff's claims. *See McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (having resolved all issues of material fact in favor of the non-movant, the court must "then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts.") (citation omitted). Accordingly, Defendant's motion for summary judgment is GRANTED.

Judgment shall be entered by separate document as provided in Rule 58(a) of the Federal Rules of Civil Procedure.

DONE and ORDERED this the 6th day of June 2018.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**